IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| RAELLEN A. KNAPEK, | ) | |
| | ) | |
|     Petitioner, | ) | Case No. CV 06-123-S-LMB |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM DECISION |
| COMMISSIONER, SOCIAL SECURITY | ) | AND ORDER |
| ADMINISTRATION, | ) | |
| | ) | |
|     Respondent. | ) | |
| ———————————————————— | ) | |

Currently pending before the Court is Raellen A. Knapek's Petition for Review seeking review of the final decision of Respondent denying her claim for Title XVI Supplemental Security Income benefits.  The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.

## ADMINISTRATIVE PROCEEDINGS

Raellen A. Knapek ("Petitioner" or "Claimant") filed an application for disability benefits on December 6, 2000.  That application was denied on May 25, 2002.  (AR 22).

Petitioner subsequently applied for supplemental security income benefits under Title XVI of the Social Security Act on December 3, 2002.  (AR 22).  This subsequent application is the subject of this Memorandum Decision and Order.

MEMORANDUM DECISION AND ORDER - 1

Petitioner alleged disability beginning August 2, 1999 (amended to December 1, 2002) (AR 22).  At the time of the amended onset date, Petitioner was thirty-one years old.  She has a high school plus education with past work experience as a CNA/home health attendant and a waitress.  (AR 138, 162, 167).

Petitioner's application was denied initially and again after reconsideration, after which Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  ALJ Kathleen H. Switzer held a hearing on October 21, 2004 at which time Petitioner, represented by counsel, appeared and testified.  Anne Aastum, M Ed, CRC, a vocational expert, also testified.  On January 27, 2005, the ALJ issued a decision denying Petitioner's claim because she found that Petitioner has the residual functional capacity to perform a significant range of medium work and therefore is not disabled as defined by the Social Security Act.  (AR 22–32).

Petitioner thereafter requested the Appeals Council review the ALJ's decision.  The Appeals Council denied Petitioner's request on January 20, 2006 making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed this instant action.  Petitioner requests that the ALJ's decision be reversed or, in the alternative, this matter be remanded in order to allow the ALJ an opportunity to further evaluate the evidence.

## II.

### STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20

MEMORANDUM DECISION AND ORDER - 2

C.F.R. §§ 404.1520, 416.920 (2005).  The second part of that process involves a determination regarding whether the claimant has a "severe impairment."  20 C.F.R. § 416.905(a) (2006).  If no "severe" impairment is found, the claimant will be found not to be disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence,"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

MEMORANDUM DECISION AND ORDER - 3

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

The issue presented in the instant appeal is whether the Appeals Council's finding that Petitioner was not disabled is supported by substantial evidence and whether it is based on application of proper legal standards.

MEMORANDUM DECISION AND ORDER - 4

## III.

## DISCUSSION

**A.      <u>Sequential Process</u>**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997).

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  If the answer is in the affirmative, disability benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant action, the ALJ found that Petitioner has not engaged in substantial gainful activity since her amended onset date of December 1, 2002.  (AR 24).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If the answer is in the negative, disability benefits are denied.  20 C.F.R. § 404.1520(c).  The ALJ found that Petitioner has the following medically determinable "severe" impairments: history of seizure disorder, history of chronic bronchitis versus asthma, rule out arthritis in left arm and wrist, adjustment disorder with mixed anxiety and depressed mood, cognitive disorder not otherwise specified, anxiety disorder not otherwise specified, and rule out borderline intellectual functioning.  The ALJ stated that inasmuch as these impairments significantly limit Petitioner's ability to perform some basic work activities, they are severe within the meaning of the Regulations.  (AR 26).

MEMORANDUM DECISION AND ORDER - 5

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  20 C.F.R. § 404.1520(d).   In this respect, the ALJ concluded that Petitioner's "severe" impairments do not meet or equal any of the criteria set forth in the Listing of Impairments.  (AR 26).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  In this respect, the ALJ concluded that Petitioner retains the residual functional capacity to perform medium work activity with limitations.  Petitioner is unable to climb ropes, scaffolds or ladders.  She has occasional limitations with fine manipulation with her left dominant hand.  She must avoid all exposure to hazards, machinery and heights.  She must avoid concentrated exposure to extreme heat and cold.  She is unable to drive.  She has moderate limitations to her ability to understand, remember and carry out detailed instruction; to maintain extended attention and concentration; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors. (AR 29).

The ALJ stated that medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, they can also do sedentary and light work.  (AR 29).

The ALJ found that Petitioner's past work as a home health attendant, as generally performed, does not exceed her current residual functional capacity for medium work activity

with limitations.  Therefore, the ALJ concluded that Petitioner can perform her past relevant work as a home health attendant.  (AR 30).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  In this respect, even though the ALJ concluded that Petitioner can perform her past relevant work, the ALJ addressed the fifth step and concluded that Petitioner is capable of making a successful adjustment to work that exists in significant numbers in the national economy.  Therefore, the ALJ concluded that Petitioner is not under a disability as defined in the Social Security Act.  (AR 31).

### B.    Petitioner's Claims

The sole issue designated by Petitioner in her brief on appeal is whether the ALJ properly supported her finding that Petitioner was not credible.  *Petitioner's Brief*, p. 6 (Docket No. 21). In the context of discussing this issue, however, Petitioner also argues that the ALJ improperly discredited the testimony of examining psychologist Dr. James M. Read.[1]  Specifically, Petitioner argues that the ALJ did not provide reasons for discrediting Dr. Read's consultative evaluation and, instead, only mentioning the conclusions of non-examining state agency physicians.  *Petitioner's Brief*, p. 9 (Docket No. 21).

---

[1]Petitioner also alludes to an issue related to the vocational expert's testimony, asserting that it was "confusing at best." *Petitioner's Brief*, p. 10 (Docket No. 21).  However, because Petitioner did not specify this as an issue on appeal, nor explain what legal error resulted from the expert's testimony or the ALJ's consideration of it, the Court will not address the issue.

MEMORANDUM DECISION AND ORDER - 7

### 1.     **Testimony of Examining Source**

At the outset, the opinions rendered by Dr. Read in this case must be properly characterized in order for the Court to determine whether the opinions were afforded proper weight. The weight that the ALJ must give Dr. Read's opinions depends upon how his opinions are characterized by the Social Security Regulations and relevant case law in the context of his psychologist–patient relationship with Petitioner. In her brief, Petitioner cites the standard in *Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988), that "[t]he ultimate conclusions of *attending* physicians must be given substantial weight and cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail." *Petitioner's Brief*, p. 9 (Docket No. 21) (emphasis added). However, the court in *Embrey* considered the weight an ALJ must give to the opinions of "treating" physicians. 849 F.2d at 422.

The Ninth Circuit Court of Appeals distinguishes among the opinions of three types of physicians: (1) treating, (2) examining, and (3) non-examining.[2] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1527(d). A treating physician is one who has provided the claimant with medical treatment or evaluation and either has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. In this case, it is clear from the record that Petitioner's treating sources are Karl Olson, M.D., who treated

---

[2]For the purposes of this opinion, the term "physician" or "doctor" includes psychologists and other health professionals who do not have M.D.'s. *See* 20 C.F.R. § 404.1527 (defining "medical opinions" as "statements from physicians and psychologists and other acceptable medical sources," and prescribing the respective weight to be given the opinions of treating and examining sources.)

MEMORANDUM DECISION AND ORDER - 8

Petitioner from January 13, 1998 to September 9, 2002, and P. Michael O'Brien, M.D., who treated her from March 19, 2001 until January 15, 2002.  (AR 177, 187).[3]

In contrast, an examining physician is one who examined the claimant, but did not have an ongoing treatment relationship with the claimant.  20 C.F.R. §§ 404.1502, 416.902.  A physician who conducts a consultive examination during the disability determination process is considered an examining source.  *Id*.  On April 25, 2003, Dr. Read conducted a consultative psychological examination of Petitioner.  (AR 210).  The record indicates that Dr. Read had not previously treated Petitioner.  Therefore, Dr. Read is an examining source and the standard from *Embry* relied on by Petitioner does not apply to his opinions.

The opinion of an examining physician is entitled to considerable weight, *Lester*, 81 F.3d at 830, and ordinarily will be entitled to greater weight than the opinion of a non-examining physician whose only knowledge of a patient is obtained from written reports.[4]  20 C.F.R. § 404.1527(d)(1).  However, an ALJ may reject the testimony of an examining physician in favor of a non-examining physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial evidence in the record.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

---

[3]Petitioner has not raised any issues concerning whether the ALJ properly or improperly considered the treating physicians' opinions as expressed in the record; thus, the Court will not examine it further.

[4]Non-examining physicians are those who neither treated nor examined the claimant.  20 C.F.R. § 1502.  There are two non-examining sources in this case.  On May 8 and July 20, 2003, Leslie Arnold, M.D., a Disability Determination Services (DDS) physician, completed the Physical Residual Functional Capacity (RFC) Assessment (affirmed by Thomas Coolidge, M.D.).  (AR 229).  On May 8 and August 6, 2003, Maximo J. Callao, Ph.D., a DDS psychologist, completed the Psychiatric Review Technique (affirmed by Dave Sanford, Ph.D.).  (AR 230).  Also, on May 8 and August 11, 2003, Dr. Callao completed the Mental RFC Assessment (affirmed by Dave Sanford, Ph.D.).  (AR 246).  Since Doctors Arnold and Callao only referenced Petitioner's medical records and neither actually examined her in-person, they are non-examining sources.

The issue here is whether Dr. Read's opinions as an examining source were properly considered according to these standards.  In her decision, the ALJ expressed that "[c]onsideration has been given the reports of the State Agency medical consultants as well as to other treating, examining, and non-examining sources."  (AR 28).  As discussed, Dr Read's opinion is entitled to considerable weight; greater weight than the opinions of Doctors Arnold and Callao as non-examining physicians.  *Lester*, 81 F.3d at 830.  If the examining physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for rejecting that opinion.  *Id*.  If the examining physician's opinion is contradicted, then the opinion can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Id.* at 830–31.  The opinion of a non-examining physician alone cannot constitute substantial evidence sufficient to justify the rejection of an examining physician's opinion.  *Id.* at 831 (citing *Pitzer v. Sullivan,* 908 F.2d 502, 506 n.4 (9th Cir. 1990)).  Moreover, even though an ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological [doctor]," SSR 96-6p, an ALJ is not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists.  20 C.F.R. § 404.1527(f)(2); *see also* 20 C.F.R. § 404.1512(b)(6).

Petitioner asserts that the ALJ discredited Dr. Read's evaluation without providing reasons for doing so.  *Petitioner's Brief*, p. 9 (Docket No. 21).  Petitioner also notes that the ALJ only mentions the non-examining State agency physicians' conclusions.  *Id.*  A careful review of the ALJ's decision, however, reveals that she properly considered all sources, including the reports of the State agency medical consultants and the treating, examining, and non-examining

MEMORANDUM DECISION AND ORDER - 10

sources.  (AR 28).  Throughout her decision, the ALJ's findings comport with Dr. Read's assessment.

At the outset, in the "Severe Impairment" section of her decision, the ALJ provided a lengthy synopsis of Dr. Read's assessment.  (AR 24–26).  In that section, the ALJ concluded that Petitioner has the following medically determinable "severe" impairments: history of seizure disorder, history of chronic bronchitis versus asthma, rule out arthritis in left arm and wrist, adjustment disorder with mixed anxiety and depressed mood, cognitive disorder not otherwise specified, anxiety disorder not otherwise specified, and rule out borderline intellectual functioning.  (AR 26).  These findings mirror Dr. Read's findings under the Diagnostic Impression section of his evaluation.  (AR 216).  A comparison of Dr. Read's consultative examination and the ALJ's synopsis of Dr. Read's findings reveals that the ALJ's decision concerning the severity of Petitioner's impairments corroborates the opinions expressed by Dr. Read.  Therefore, the Court concludes that the ALJ accurately characterized and summarized Dr. Read's opinions in determining the severity of Petitioner's impairments.

Further, in the third step of her analysis, "Impairment Listing and Residual Functional Capacity (RFC)," the ALJ appropriately stated that she must consider any medical opinions which reflect judgments about the nature and severity of impairments and resulting limitations.  (AR 26); *see* 20 C.F.R. § 416.927; SSR 96-2p, 96-6p.  In this section, the ALJ expressed that she considered all treating, examining, and non-examining sources, including the reports of the State agency medical consultants in addition to Petitioner's testimony.  (AR 26-28).  The ALJ concluded that Petitioner retains the residual functional capacity to perform medium work activity with limitations.  (AR 29).  Specifically, the ALJ found, among other findings, that

MEMORANDUM DECISION AND ORDER - 11

Petitioner has "moderate limitations to her ability to understand, remember and carry out detailed instruction; to maintain extended attention and concentration; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors." (AR 29).  Comprehensively, the ALJ found that Petitioner's past work as a home health attendant, as generally performed, does *not* exceed her current residual functional capacity for medium work activity with limitations. (AR 30).

Petitioner argues that the ALJ discredited Dr. Read's report in this portion of her analysis, and relies upon the following language to demonstrate that the ALJ's RFC determination conflicts with Dr. Read's assessment:

> "[h]er ability to perform work-related mental activities appears to be poor;" "[h]er ability to sustain concentration is subjectively poor;" "[h]er ability to interact socially appears to be poor;" "[h]er general adaptability appears to be relatively poor unless her seizures can be fully controlled;" "I think that her capacity to obtain and maintain employment at this point is somewhat limited, but might improve with some coaching and some additional control over the seizures."

*Petitioner's Brief*, p. 9 (Docket No. 21).  Firstly, Petitioner provided no reasoning to explain her argument.  *See* D. Id. L. Civ. R. 7.1(b)(1) (providing that the moving party's brief must include "all of the reasons and points and authorities relied upon").  Additionally, Petitioner failed to consider the synopsis the ALJ provided in the "Severe Impairments" section.  There, the ALJ summarized the specific language Petitioner cites above:

> "[Dr. Read] stated that [Petitioner's] ability to perform work-related mental activities appeared to be poor based on her confusion with some questions, her inability to remember, her subjectively poor ability to sustain concentration, her premorbid ability to interact socially, and a poor ability to adapt generally, unless the seizures could be controlled.  He indicated that her capacity to obtain and

MEMORANDUM DECISION AND ORDER - 12

maintain employment at this point was somewhat limited, but might improve with some coaching and some additional control over the seizures."

(AR 26).

Because the ALJ clearly discussed specific language from Dr. Read's assessment when determining the severity of Petitioner's impairments, the ALJ need not re-state those relevant findings in other sections of her decision.[5]  It would be redundant to require the ALJ to repeat findings from previous sections of the decision to all other applicable portions.  Furthermore, in her discussion of medical evidence under "Impairment Listings and Residual Functional Capacity," the ALJ again acknowledged Dr. Read's assessment by indicating that consideration was given to the reports of examining medical sources.  (AR 28).  To demonstrate that Dr. Read's assessment was properly considered, the ALJ need not provide another synopsis of Dr. Read's findings that the ALJ had already set forth earlier in the decision.  Rather, it is sufficient to provide a summary of Dr. Read's findings and then refer back to them as needed in later sections of the decision.

Moreover, the findings of the ALJ in this case do not directly conflict with Dr. Read's opinions that "[p]rognosis is guarded, but I suspect this woman [Petitioner] may be capable of improving her situation beyond what it is now.  If her seizures can be controlled, it sounds like she might be able to go back to doing some kind of work."  (AR 216). These statements, in

---

[5]There is no rigid requirement that the ALJ specifically refer to every piece of evidence.  *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

MEMORANDUM DECISION AND ORDER - 13

conjunction with Dr. Read's other expressed opinions, are consistent with the findings of the ALJ.

Finally, the opinions of the examining and non-examining sources involved in this determination do not contradict each other. Specifically, Dr. Arnold adopted the decision of the prior ALJ. (AR 221) ("Some State agency physicians in this case have adopted all the findings in the prior Administrative Law Judge decision (Exhibit B6F))." Also, Dr. Callao found that Petitioner had moderate limitations. (AR 240) ("Other State agency physicians in this case determined that, based on mental impairments, the claimant had moderate limitations in her activities of daily living, her ability to maintain social functioning, and her ability to maintain concentration, persistence, or pace (Exhibit B7F)" (AR 29)). While the ALJ, in citing the opinions, only noted their conclusions, she made reference to specific exhibits in the record, rather than re-stating the reasons behind the respective opinions. In summary, the non-examining physicians' opinions are consistent with those of the examining and treating physicians, and Petitioner has not demonstrated any error by the ALJ in her consideration of Dr. Read's opinions. (AR 29).

### 2.   Petitioner's Credibility

Petitioner argues that the ALJ failed to properly support her finding that Petitioner was not credible. *Petitioner's Brief*, pp. 6-9 (Docket No. 21). Resolution of conflicts in the testimony and of credibility questions is a function solely of the ALJ. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). Furthermore, "if the ALJ's credibility finding is supported by substantial evidence in the record," the Court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ is in the best position to make such

MEMORANDUM DECISION AND ORDER - 14

credibility determinations and, for this reason, the ALJ's credibility determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). Indeed, "[c]redibility determinations are the province of the ALJ." *Fair*, 885 F.2d at 604.

In this case, the ALJ found Petitioner to be credible "regarding the presence of some degree of discomfort and her inability to do some types of work." (AR 28). In the view of the ALJ, there was sufficient and reliable evidence to show that Petitioner has a "medically determinable impairment" that could produce the pain and other symptoms alleged by her. *Id.* However, the ALJ also concluded that the same evidence "does not support the [Petitioner's] allegations of the intensity and persistence of such pain and other symptoms," resulting in a determination as to the degree or severity of the pain and symptoms claimed by Petitioner. *Id.*

Where, as here, the ALJ finds the claimant's pain testimony to be not entirely credible, the Ninth Circuit has held that "the ALJ may reject the claimant's testimony regarding the severity of [her] symptoms only if he makes specific findings stating clear and convincing reasons for doing so," and he "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); s*ee also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Specifically, in determining whether the claimant's subjective testimony regarding the severity of her symptoms is credible, "the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [claimant's] testimony and [his/her] conduct, [claimant's] daily activities, [claimant's] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). In evaluating this case, the ALJ

MEMORANDUM DECISION AND ORDER - 15

appropriately relied on 1) the testimony of Dr. Read concerning the nature, severity, and effect of

Petitioner's symptoms, and 2) the inconsistencies in Petitioner's testimony regarding her state of

depression in relation to her use of anticonvulsive medication or lack thereof and her conduct,

work, and daily activities.

The ALJ found that Petitioner exaggerated her limitations and gave several reasons to

support this conclusion.  The ALJ found that the statement of Dr. Read, that Petitioner's seizures

had not been medically defined, cast some doubt on the credibility of Petitioner's testimony.

(AR 28).  Petitioner aptly points out that the record documents that Petitioner suffers from

seizures, but inaccurately states that "[e]pilepsy is a defined impairment throughout the record."

*Petitioner's Brief*, p. 7 (Docket No. 21).  This statement is over-reaching; of all the treating,

examining, and non-examining physicians, including clinics and hospitals, only Dr. Olson (a

treating physician) stated that Petitioner suffered from "epilepsy" on five occasions (AR 191,

194, 198, 199, 249).  Doctors O'Brien, Read, Arnold and Callao, and St. Alphonsus Regional

Medical Center, St. Luke's Regional Medical Center, Walter Knox Regional Medical Center,

and Elmore Medical Center elected to use the terms "seizure(s)," "seizure disorder," and

"seizure activity" instead.  (AR 174, 175, 178–180, 182–186, 187, 189, 196, 210, 211,

216–219).[6]  In fact, Petitioner's medical records indicate that she wore an EEG recording device

for a 24-hour period, and no epileptiform activity was found.  (AR 180).

Moreover, the ALJ relied on the fact that Dr. Read was unsure, after reviewing

Petitioner's medical records, as to whether the seizures had some somatoform quality, induced

---

[6]Despite the five occasions, even Dr. Olson used terms other than "epilepsy"(e.g., seizure or seizure disorder) with more frequency to describe Petitioner's disorder.  (AR 191, 199, 203, 249, 250, 251).

by anxiety, or psuedoseizures.  (AR 217).  In sum, Dr. Read's statement about the seizures'

uncertain definition casts some doubt on Petitioner's credibility.

Additionally, Dr. Read opined that, although Petitioner's capacity to obtain and maintain

employment at the time may have been somewhat limited, he thought it might improve with

some coaching and additional control over the seizures.  (AR 217).  This demonstrates Dr. Read

questioned the severity of the seizures, and indicates that the seizures are more manageable and

treatable than Petitioner claims them to be.  In Dr. Read's words, "If her seizures can be

controlled, it sounds like she might be able to go back to doing some kind of work."  (AR 216).

Taken together, these statements undermine Petitioner's credibility regarding the severity of the

seizures and Petitioner's functional capabilities in spite of them.

The ALJ also relied on inconsistencies in Petitioner's testimony when examining her

credibility.  Specifically, the ALJ addressed two areas where Petitioner's testimony reduced her

credibility: 1) inconsistent statements about her state of depression and the effects of her

anticonvulsive medication, and 2) prior inconsistencies regarding work, conduct, and daily

activities.  (AR 28).  The ALJ noted that although Petitioner testified that Dilantin causes

depression, Petitioner also stated that she no longer was experiencing suicidal thoughts.

Petitioner challenged this statement as non-contradictory because "[d]epression is a known side-

effect of Dilantin . . . [and] [s]uicidal thoughts are only one component of depression."

*Petitioner's Brief,* p. 6 (Docket No. 21).  Petitioner is correct when she states that "just because

[she] does not have suicidal thoughts on a daily basis, it cannot be concluded that an individual

does not suffer from depression."  *Id.*  However, the ALJ was not adopting Petitioner's testimony

that Dilantin causes depression nor that Petitioner does not have suicidal thoughts anymore.

MEMORANDUM DECISION AND ORDER - 17

Rather, the ALJ noted that these statements were made by Petitioner and are somewhat contradictory; therefore, the statements tend to cast further doubt on Petitioner's credibility.

The ALJ also found inconsistencies between Petitioner's testimony about the severity of her impairments and her previous conduct, work record, and daily activities.  (AR 25).  Although Petitioner decided to quit her job because her seizures rendered her incapable of taking care of her charge, she testified that six months later she began to take care of her uncle until he went into a nursing home.  (AR 51-53).  Petitioner argues that the ALJ incorrectly concluded that Petitioner took care of her uncle independently since Petitioner testified that she had help in caring for her uncle.  *Petitioner's Brief*, pp. 7-8 (Docket No. 21).  However, in making this argument, Petitioner failed to provide the ALJ with specific facts or examples to demonstrate the extent of assistance Petitioner received in caring for her uncle.  Considering Petitioner's general and vague statements about help received, the ALJ found within her discretion that, regardless of help Petitioner may or may not have been receiving, it is inconsistent for Petitioner and her family to decide that Petitioner could no longer take care of her charge as a CNA, but then six months later start taking care of her uncle.  (AR 28).

Additionally, the ALJ found it inconsistent that, although Petitioner testified that the State of Idaho had taken her driver's license, and despite her seizures, Petitioner drove approximately 60 miles for her appointment with Dr. Read in April 2003.  To rebut this, Petitioner argues that "she drove to the appointment out of necessity;" had she not made that appointment, the Social Security Administration would have used that fact against her.  *Petitioner's Brief*, p. 8 (Docket No. 21).  Furthermore, Petitioner asserts that, even though she testified at the hearing in October 2004 that the State of Idaho had taken her driver's license, the

MEMORANDUM DECISION AND ORDER - 18

ALJ mistakenly assumed Petitioner did not have her driver's license at the time of her appointment with Dr. Read in April 2003.  (AR 28).  To demonstrate that the State had not yet taken away her driver's license prior to the appointment with Dr. Read, Petitioner relies on Dr. Read's statement that "[s]he has a driver's license. . . ."  (AR 213).  Regardless of when the State of Idaho took away Petitioner's license, Petitioner had been told by physicians not to drive as early as June 2002.  (AR 50, 194, 251).  In her decision, the ALJ did not state that Petitioner's license had been taken from her at the time of her appointment with Dr. Read.  (AR 211).  Rather, the ALJ accurately conveyed Petitioner's testimony that the State had indeed taken away her license.  Then, the ALJ stated that, despite her seizures, Petitioner drove 60 miles to meet with Dr. Read, actions which the record demonstrates were against Dr. Olson's orders not to drive.  (AR 50).  By including these statements, the ALJ again demonstrated Petitioner's inconsistent behavior (i.e., driving a long distance even though her physician had ordered her not to drive an entire year beforehand).

The ALJ also found that Petitioner was inconsistent in how her limitations effected her daily living.  Petitioner testified that she engaged in normal activities of daily living, including preparing meals, bathing, house cleaning, doing homework with her kids, and using the computer.  (AR 65, 78, 213).  However, the ALJ noted that Petitioner was able to clean while down on the floor, but required others to transfer clothes to the dryer and load the dishwasher.  (AR 28).  Additionally, the ALJ found Petitioner's testimony regarding how much she could lift with one and/or two hands to be contradictory.  (AR 71).

Finally, when considering a claimant's credibility, an ALJ may also consider whether a claimant followed a prescribed course of treatment, *Fair*, 885 F.2d at 603, which the ALJ did in

MEMORANDUM DECISION AND ORDER - 19

the present case.  "[U]nexplained, or inadequately explained, failure to seek treatment or follow

a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain

testimony."  *Id.*; *see also* 20 C.F.R. § 404.1530 (explaining the need to follow prescribed

treatment).  The ALJ noted that Petitioner was not entirely compliant with her medical regime.

(AR 211).  In her brief, Petitioner admits as much, but makes much of the fact that Petitioner was

only not compliant to her prescribed medical regime as it related to her anti-depressant

medication.  *Petitioner's Brief*, p. 8 (Docket No. 21).  The medical regime is more broad than

one medication prescribed for one condition; Petitioner was receiving treatment for many

ailments, most significantly depression and seizures.   (AR 46).  Even though Petitioner contends

that she was completely compliant with regard to her anti-convulsive medications, Petitioner's

failure to adhere to her complete medical regime casts doubt on her credibility.  *See Fair*, 885

F.2d at 603.  This conclusion is supported in the record by Dr. Read's report that "[Petitioner]

sometimes forgets to take medication.  She says she tries to take the medication as regularly as

she should, and she is taking the anticonvulsive medication as regularly as she should but she

sometimes forgets to take the Celexa."  (AR 211).

    After carefully reviewing the record, the Court concludes that the ALJ properly rejected

Petitioner's credibility regarding the intensity and persistence of such pain and other symptoms,

and her inability to do any type of work.  In the Court's view, the record contains substantial

evidence to support the conclusions of the ALJ.  The ALJ properly evaluated Petitioner's

testimony and provided clear and convincing reasons for finding her testimony not entirely

credible.

MEMORANDUM DECISION AND ORDER - 20

Where, as here, the ALJ has made specific findings justifying a decision to discount and reject certain allegations made by Petitioner regarding symptoms and their functional effect on daily activities, and those findings are supported by substantial evidence in the record, as the Court concludes they are in this action, the Court's role is not to second-guess that decision. *Thomas*, 278 F.3d at 959.  The ALJ's findings to reject Petitioner's credibility are sufficiently specific to allow the Court to conclude that the ALJ's decision is based on permissible grounds and did not arbitrarily discredit Petitioner's testimony.  *See Bunnell*, 947 F.2d at 345. Accordingly, the Court concludes that the ALJ's decision to reject certain aspects of Petitioner's subjective testimony concerning her limitations is not erroneous and should not be disturbed on appeal.

## IV.

### CONCLUSION

Although there is some evidence tending to support Petitioner's position, Petitioner's primary contentions appear to be that the ALJ gave too much weight to the evidence upon which she relied and did not give enough weight to other evidence favorable to Petitioner.  Petitioner argues that the record, when viewed as a whole, supports a conclusion that she was disabled within the meaning of the Act from her alleged onset date.

However, as discussed in this decision, the ALJ is the fact finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579;  *Vincent on Behalf of Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, as exists here, the

MEMORANDUM DECISION AND ORDER - 21

Court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549. The Court finds that the evidence upon which the ALJ relied can reasonably and rationally be relied upon to support his conclusion, despite the fact that such evidence may be susceptible to a different interpretation.

The Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards. Accordingly, the Court will not substitute its interpretation or judgment for that of the ALJ in reaching his decision and the Commissioner's decision is upheld.

**V.**

**ORDER**

Based on the foregoing, the decision of the Commissioner is affirmed and this action is dismissed in its entirety with prejudice.



**DATED:  June 25, 2007.**

**Honorable Larry M. Boyle**
**U. S. Magistrate Judge**

MEMORANDUM DECISION AND ORDER - 22